## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **JEFFREY PRICE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 15-CV-03333** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

Petitioner Jeffrey Price has filed an Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 16).  After reviewing the entire record in the case, the Court finds no need for an evidentiary hearing because any factual matters may be resolved based on the record before the Court.

The Motion is DENIED.  All of Petitioner's claims, with the exception of the ineffective assistance of counsel claims, are procedurally defaulted.  Petitioner is not entitled to relief on his ineffective assistance of counsel claims because he can show

neither deficient performance nor prejudice.  Finally, even if Petitioner's remaining claims were not procedurally defaulted, Petitioner is not entitled to relief.

## I. BACKGROUND

Petitioner took sexually explicit photographs of his daughter R.P. when she was between the ages of 10 and 12.  He put some of the photographs on the internet.  Petitioner also had stored on his computers a large amount of child pornography depicting other children.

Petitioner was originally charged in October 2009 and was detained throughout the case.  United States v. Price, Central District of Illinois Case No. 09-30107 (Crim.).  The Second Superseding Indictment (Crim., d/e 76) charged him with Use of a Minor to Produce Child Pornography in violation of 18 U.S.C. § 2251(a) and (e) and Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).  The Court appointed several attorneys to represent Petitioner over the course of the proceedings.  Petitioner ultimately elected to proceed pro se with standby counsel shortly before trial.

In November 2011, after a four-day trial, a jury found Petitioner guilty of producing child pornography and of possessing child pornography. By special verdict, the jury found that five of the photographs of R.P. depicted sexually explicit conduct. <u>See</u> Crim., Jury Verdict (d/e 159, 4 of 8); Tr. at 971 (d/e 205).

With Petitioner's agreement, the Court appointed counsel to represent Petitioner at sentencing. In March 2012, this Court sentenced Petitioner to 18 years' imprisonment on the production count and a concurrent 6-year term of imprisonment on the possession count. The Court also sentenced Petitioner to a lifetime term of supervised release and imposed the $200 mandatory special assessment.

Petitioner appealed and was appointed counsel on appeal. On appeal, Petitioner challenged the denial of his motion to suppress and the jury instruction on lascivious exhibition. The Government filed a cross-appeal arguing that Petitioner's 18-year sentence, less than half of the 40-year Guideline sentence, was substantively unreasonable. On December 5, 2014, the Seventh Circuit affirmed. <u>United State v. Price</u>, 775 F.3d 828 (7th Cir. 2014).

Neither Petitioner nor the Government sought further review. Therefore, Petitioner's conviction became final on March 5, 2015. Clay v. United States, 537 U.S. 522, 525 (2003) (a judgment for conviction becomes final when the 90-day period for filing a petition for certiorari expires).

On December 7, 2015, Petitioner timely filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 1). The Court directed Respondent United States of America to file an answer, motion, or other response. Respondent filed a response seeking to dismiss several claims for failure to state a claim, arguing that the claims were perfunctory and unsupported by facts or arguments, arguing that several claims were procedurally defaulted, and addressing some of the claims on the merits. Resp. (d/e 3). Petitioner filed a reply (d/e 4), asserting that he previously requested transcripts but the request was denied. Petitioner also sought to reserve all other issues for discussion with court-appointed counsel.

On June 23, 2016, this Court entered an Order denying what the Court construed as Petitioner's request for counsel. Order at 2 (d/e 6). As for the sufficiency of Petitioner's Motion, the Court

found that a few of Petitioner's claims contained sufficient facts and argument to permit the Court to review them but that the majority of the claims did not state supporting facts. Id. at 2-3. Because the deficiencies in Petitioner's Motion might be corrected if Petitioner had access to the transcripts, the Court directed the Clerk to send the existing transcripts to the Warden of the Federal Correctional Institution in Milan, Michigan. Id. at 3. The Court directed the Warden to maintain custody and control of the documents but to allow Petitioner reasonable access to the transcripts under the direct supervision of a prison official. Id. at 3-4. The Court also granted Petitioner leave to file an amended § 2255 Motion. Id. at 4. In August 2016, the Court granted Petitioner's request for one additional transcript. August 4, 2016 Text Order.

On January 17, 2017, after several extensions of time, Petitioner filed his Amended § 2255 Petition (d/e 16). The Amended Petition lists four grounds, followed by a list of individual claims:

GROUND ONE: Abuse of Discretion

1.    Court denied use of Exculpatory Evidence by Defendant

2.    Court allowed false testimony on behalf of Government

3.    Denied rights pursuant to 18 USC 3142

4.    Defendant compelled to proceed pro se

5.    Court denied Defendant's rights under 18 USC 3161

6.    Jury not fully informed by trial court Judge

7.    Prejudicial Error and Bias

GROUND TWO:  Ineffective Assistance of Counsel

1.    Robert Scherschligt

2.    Ron Stone

3.    James Elmore

4.    Jon Noll & Daniel Noll

5.    Joshua Press, Evan Brennan, Jennifer Madden (Appellate)

GROUND THREE:  Fraud on the Court

1.    Fraudulently dated Federal Court documents

     a.    Magistrate Judge Byron Cudmore

     b.    Special Agent Bowers

     c.    Special Agent Michael Mitchell

        d.     Springfield Police Detective Paula
              Morrow

GROUND FOUR:  Violation of Rights

        1.     Violation of Constitution of the United States

        2.     Violation of Rights pursuant to United States
              Code cited throughout attachments.

Am. Mot. at 4-8 (d/e 16).  Petitioner attached to the Motion his

argument and supporting material.

On April 7, 2017, Respondent filed its Response (d/e 20) to

the Motion.  On May 11, 2017, Petitioner filed his Reply (d/e 21).

## II. ANALYSIS

A person convicted of a federal crime may move to vacate, set

aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Relief

under § 2555 is an extraordinary remedy because a § 2255

petitioner has already had "an opportunity for full process."

Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007).

Post-conviction relief under Section 2255 is therefore "appropriate

only for an error of law that is jurisdictional, constitutional, or

constitutes a fundamental defect which inherently results in a

complete miscarriage of justice."  Harris v. United States, 366 F.3d

593, 594 (7th Cir. 2004) (internal quotation marks and citation omitted).  In considering a Section 2255 motion, the Court reviews the evidence and inferences drawn from the evidence in the light most favorable to the Government.  Carnine v. United States, 974 F.2d 924, 928 (7th Cir. 1992).

**A.    All of Petitioner's Claims, With the Exception of the Ineffective Assistance of Counsel Claims, are Procedurally Defaulted**

Section 2255 petitions are "neither a recapitulation of nor a substitute for direct appeal."  McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996) (internal quotation marks and citation omitted).  Therefore, a petitioner cannot use a § 2255 motion to challenge (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; or (3) constitutional issues that were not raised on direct appeal unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal or the petitioner can show a fundamental miscarriage of justice.  See McCleese, 75 F.3d at 1177; Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States,

26 F.3d 717 (7th Cir. 1994); <u>United States v. Evans</u>, 123 F. Supp. 2d 1122, 1124 (N.D. Ill. 2000).

In this case, all of Petitioner's claims, with the exception of the ineffective assistance of counsel claims, are procedurally defaulted.  <u>See</u> <u>Delatorre v. United States</u>, 847 F.3d 837, 845 (7th Cir. 2017) (noting that ineffective assistance of counsel claims may generally be raised for the first time on collateral review because such claims are "invariably doom[ed] on direct review") (internal quotation marks and citations omitted).  Petitioner has not even attempted to demonstrate cause for the procedural default or actual prejudice and does not argue a fundamental miscarriage of justice would result if the Court does not consider his claims.

**B.      Petitioner Has Failed to Demonstrate Ineffective Assistance of Counsel**

Petitioner argues that all of his attorneys provided ineffective assistance of counsel.  As an initial matter, the Court notes that Petitioner represented himself from October 19, 2011 until the end of the jury trial, at which time the Court appointed counsel for sentencing.  Crim., November 4, 2011 Minute Entry.  For the time period when Petitioner represented himself, he cannot "complain

that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" Faretta v. California, 422 U.S. 806, 834 n.46 (1975).

To succeed on a claim of ineffective assistance, a section 2255 petitioner must show: (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice as a result. Wyatt v. United States, 574 F.3d 455, 457-58 (7th Cir. 2009) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). The first prong is known as the "performance" prong, and the second is known as the "prejudice" prong. Id.

Failure to prove either prong is fatal to a claim of ineffective assistance. Chichakly v. United States, 926 F.2d 624, 630 (7th Cir. 1991); see also Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."). When examining the performance prong, this Court applies a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. Counsel's performance "must merely be reasonably

competent." <u>Delatorre</u>, 847 F.3d at 845.

To satisfy the prejudice prong, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694; <u>see</u> <u>also</u> <u>Gentry v. Sevier</u>, 597 F.3d 838, 851 (7th Cir. 2010). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

Petitioner argues that his first attorney, Assistant Federal Public Defender Robert Scherschligt, provided ineffective assistance of counsel. Scherschligt represented Petitioner between October 22, 2009 and April 30, 2010 when Petitioner asked for new counsel. Crim., Mot. (d/e 14).

Petitioner argues that Scherschligt was ineffective because he told Petitioner to waive the preliminary hearing. However, counsel's performance is not deficient for failing to make a losing argument, and probable cause existed. <u>Fuller v. United States</u>, 398 F.3d 644, 652 (7th Cir. 2005); <u>see</u> Crim., Order of Detention (d/e 6) (finding the weight of the evidence clearly satisfied the probable cause standard); Crim., November 18, 2009 Indictment

(d/e 9). Petitioner can show neither deficient performance nor prejudice from the waiver of the preliminary hearing.

Petitioner also argues that Scherschligt should have objected to certain evidence presented at the detention hearing. At the detention hearing, the Government called one witness, Detective Paula Morrow; proffered additional evidence; and submitted images of child pornography not involving R.P. that were recovered from the recycle bin of Petitioner's computer. Tr. at 7-26 (d/e 152) (October 27, 2009).

Petitioner has failed to show deficient performance. "[T]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. §3142(e). In addition, while Petitioner appears to argue that Detective Morrow testified that Petitioner did not violate the safety plan, the transcript shows that she testified that Petitioner did initially violate the safety plan but that he did not violate the safety plan after September 2009. Crim., Tr. at 16 (d/e 152). Furthermore, any errors that occurred during his pretrial detention hearing are moot because they do not impact his ultimate conviction and sentence. See Hull v. United

States, No. 06-cv-1012, 2008 WL 4148572, at *3 (C.D. Ill. Sept. 3, 2008) (finding that a postconviction habeas petition is not the proper avenue for challenging evidentiary rulings during a pretrial bond hearing). Petitioner has failed to show that Scherschligt's performance was deficient or that Petitioner suffered prejudice.

Petitioner next argues that attorney Ronald Stone provided ineffective assistance of counsel for failing to contact Petitioner. On April 30, 2010, the Court appointed Stone to represent Petitioner after Scherschligt was allowed to withdraw. Stone represented Petitioner for approximately three days before moving to withdraw due to a conflict of interest. Crim., Mot. (d/e 16) (indicating that counsel had a conflict because of the witnesses involved). Petitioner has failed to show deficient performance by Stone or that Petitioner suffered prejudice.

Petitioner next argues that attorney James Elmore provided ineffective assistance of counsel. Elmore represented Petitioner from May 11, 2010 to July 11, 2011. Elmore was allowed to withdraw after Petitioner asked for new counsel. Crim., Mot. (d/e 34); July 11, 2011 Minute Entry.

Petitioner asserts that Elmore asked for too many

continuances.  While represented by Elmore, Petitioner sought and obtained seven continuances.  See Crim., Mot. (d/e 20) (additional time needed to review discovery and prepare for trial); (d/e 21) (additional time needed to review extensive discovery and prepare for trial); (d/e 22) (same); (d/e 23) (plea negotiations ongoing and additional time needed to review extensive discovery); (d/e 24) (plea negotiations ongoing and counsel interviewing witness and reviewing extensive discovery); March 25, 2011 Minute Entry (oral motion by defense counsel); May 4, 2011 Minute Entry (oral motion by defense counsel).  In addition, Petitioner did not object to a brief continuance sought by the Government on two occasions.  Crim. Mots. (d/e 25) (trial thereafter continued from April 5, 2011 to April 27, 2011 ); d/e 33 (trial thereafter continued from July 18, 2011 to August 1, 2011).

The decision to ask for a continuance is a tactical decision and one that is entitled to strong deference.  Blake v. United States, 723 F.3d 870, 886 (7th Cir. 2013) (describing the decision to seek a continuance as a tactical decision).  Counsel is not required to obtain the client's consent prior to making purely tactical decisions.  United States v. Gearhart, 576 F.3d 459, 463 n.

3 (7th Cir. 2009). If an attorney articulates a strategic reason for a decision that was sound when made, the decision generally cannot support a claim of ineffective assistance of counsel. <u>Yu Tian Li v. United States</u>, 648 F.3d 524, 527 (7th Cir. 2011); <u>Harris v. Reed</u>, 894 F.2d 871, 876 (7th Cir. 1990) (noting that "this court is not free to question the objectively reasonable strategic decisions of counsel").

In this case, the record reflects adequate reasons for Elmore to request the continuances, including to interview witnesses, review the extensive discovery, and engage in plea negotiations. Petitioner has failed to make any showing that Elmore' decisions to seek continuances and to not object to the Government's motions for a continuance fell outside the wide range of professionally competent assistance. Additionally, Petitioner cannot show prejudice. In fact, Petitioner himself sought an additional continuance after he chose to proceed pro se. Crim., October 19, 2011 Minute Entry.

Petitioner also complains that Elmore wanted Petitioner to plead guilty, did not think Petitioner's spouse, Patricia Price, should testify, and made certain comments to Patricia about his

personal beliefs as to Petitioner's guilt or innocence. Petitioner also criticizes Elmore for not sharing how he (Elmore) wanted to proceed. Even if any of these actions constituted deficient performance, Petitioner has failed to show any prejudice. Petitioner did not plead guilty, Petitioner's spouse testified at trial, Elmore's statements to Petitioner's spouse did not result in prejudice, and Petitioner proceeded at trial pro se and made his own decisions regarding how to proceed.

Petitioner next argues that attorneys Jon Gray Noll and Dan Noll provided ineffective assistance of counsel but also states that "they did more to represent [him than] had the previous court appointed attorneys." Am. Pet. (d/e 16-3, 7 of 16). The Nolls represented Petitioner from July 11, 2011 to October 19, 2011, when Petitioner elected to proceed pro se. The Nolls were then appointed as standby counsel.

Petitioner states that the Nolls were limited in scope as to the motions that they would file as active counsel and would not do the needed internet research that would have shown examples from mainstream media that "would offset the Government's argument as to the nature of the artistic and family photos." Id.

Petitioner also argues that Jon Noll informed Petitioner that Petitioner could submit motions on his own with the Nolls as standby counsel, and Petitioner followed that advice, although he did not want to do so.  Id. at 8.

Petitioner can show neither deficient performance nor prejudice.  The Nolls filed numerous motions on Petitioner's behalf[1] and Petitioner has failed to identify any motion the Nolls should have filed that would not have been frivolous.  Fuller, 398 F.3d at 652 (counsel's performance is not deficient for failing to make a losing argument).  Although Petitioner claims the Nolls did not refile the motion to sever charges that the Court denied on October 3, 2011, Petitioner raised that motion again pro se on October 28, 2011 (Crim., d/e 138), and the Court denied the motion.  Crim., Tr. at 89 (d/e 206) (October 28, 2011).

In addition, Petitioner presented evidence at trial of images

---

[1] The Nolls filed the following motions:  an Omnibus Motion, which included a motion for bond, a request for a bill of particulars, a motion to dismiss, and a motion for severance of the charges (Crim., d/e 44); motion to appoint computer expert (Crim., d/e 45); motion to suppress (Crim., d/e 46); motion for the appointment of an investigator (Crim., d/e 52); motion to allow Petitioner to view the photographic evidence (Crim., d/e 54); motion to adjust the trial schedule (Crim., d/e 57); and a motion for service of subpoenas without prepayment of costs (Crim., d/e 65).

from mainstream media and argued that the images in question were artistic and not child pornography. Therefore, Petitioner cannot show prejudice from the Nolls alleged failure to conduct such research.

As for Petitioner's claim that Jon Noll advised Petitioner to proceed pro se and that Petitioner felt compelled do so, that claim is refuted by the record. Petitioner moved to proceed pro se by way of a letter. On October 19, 2011, the Court held a hearing.

At the hearing, Jon Noll advised the Court that Petitioner told him the previous week that he wanted to proceed pro se. Jon Noll agreed to stay on as standby counsel if so directed by the Court. Tr. at 4-6 (d/e 229) (October 19, 2011).

The Court had Petitioner sworn and then conducted a colloquy with Petitioner to ensure that he was knowingly and voluntarily waiving his right to be represented by Mr. Noll. Tr. at 11. When asked why he wanted to represent himself, Petitioner stated:

> During the last hearing we had when—on the suppression of evidence, there was a few times that I felt that had I been able to stand right in front of the detective and the caseworker in question and ask them a question point blank, that they—and confront them

with the statements that I said that they made, perhaps responses would have been different.

I believe that my cross-examination of the alleged victim and the witness could play a very crucial role in getting to the truth of the matter.

It's not something I've done lightly. I thought about doing this for--from day one. But I have been very, very, very patient. And I have kept in mind exactly what you said, a fool for a client. I have listened to the advice of the Court and of the attorney. And I have read and I have been very, very patient. And I have been waiting to eventually get an attorney that would believe in me, that would listen, and would do some of the things that I felt needed to be done.

I finally found that in Jon and Daniel Noll. And even though the Government just now feels like they're ready to wrap up and go to trial, I feel like I'm just now getting started. Last night at 4:00 I received 600 pages. 400 pages from my attorney last week---

Tr. at 13-14. When the Court interrupted to advise Petitioner that "we're not talking about the continuance issue right now" and that "[w]e're just talking about self-representation," Petitioner responded, "I understand. I believe I can do it." Tr. at 14. Despite the Court repeatedly urging Petitioner not to represent himself, Petitioner insisted on proceeding pro se. See Tr. at 12 (the Court stating: "A fool for a client, that's the expression that's used); Tr. at 18 (the Court stating: "I think it's unwise for you to represent

yourself" and "I strongly, strongly urge you not to represent

yourself."); Tr. at 20 (wherein Petitioner stated he still wished to

represent himself even in light of the penalty he might suffer if

found guilty and in light of the difficulties of representing himself).

At no time did Petitioner indicate that he felt compelled to

represent himself or that representing himself was the only way to

get filed the motions he wanted to file.  Therefore, his current

claims are refuted by the record.  See, e.g., Gallo-Vasquez v. United

States, 402 F.3d 793, 799 (7th Cir. 2005) (affirming summary

dismissal of claim that counsel was ineffective for failing to bring

an interpreter to their meetings; the record refuted the petitioner=s

claim that a language barrier prevented him from communicating

with counsel).  Petitioner has failed to show deficient performance

of Jon or Daniel Noll or that he suffered any prejudice.

Petitioner next argues that his appellate attorneys from

Skadden, Arps, Slate, Meagher and Flom LLP provided ineffective

assistance of counsel.  The Seventh Circuit docket sheet reflects

that the Seventh Circuit appointed Joshua S. Press to represent

Petitioner on appeal.  In November 2012, shortly after the opening

brief was filed, Press moved to withdraw because he was leaving

the firm and asked that the Court substitute Evan P. Brennan, another attorney in the firm who had been working on the case with Press. See United State v. Price, Seventh Circuit Case No. 12-1630 (Appellate), Mot. to Withdraw (d/e 21) (reflecting Petitioner's consent); see also Order (d/e 22) (granting the motion). The Seventh Circuit then struck the opening brief for failure to contain a jurisdictional statement that complied with Federal Rule of Appellate Procedure 28(a)(4). Id., Order (d/e 23). Attorney Brennan resubmitted the brief. See id. (d/e 24). Both briefs contained the same issues. Brennan argued the case.

 In July 2014, Brennan moved to withdraw and substitute another attorney in the firm, Jennifer Madden. Appellate (d/e 53) (also reflecting that Petitioner consented); Id. Order (d/e 54) (granting the motion). On December 5, 2014, the Seventh Circuit issued its decision affirming the district court. Id. Opinion (d/e 56).

On December 22, 2014, Madden moved to withdraw, and Petitioner objected. Appellate (d/e 58, 59). Madden filed a supplemental motion stating that she did not believe there were any reasonable bases on which to proceed for petition for writ of

certiorari or a petition for rehearing.  Id. (d/e 61).

On January 9, 2015, the Seventh Circuit granted the motion to withdraw and gave Petitioner until February 6, 2015 to file a pro se petition for rehearing.  Id. (d/e 63).  Petitioner did not do so.

Petitioner now argues that Press, Brennan, and Madden provided ineffective assistance.  Petitioner asserts that he wanted to attack all points of error in the proceedings but put his trust in his attorney.

Appellate counsel is not ineffective for failing to raise all possible claims of error.  Page v. United States, 884 F.2d 300, 302 (7th Cir. 1989).  To show deficient performance, Petitioner must show that his appellate counsel omitted significant and obvious claims from the direct appeal that were clearly stronger than the issues counsel did raise on direct appeal.  Blake v. United States, 723 F.3d 870, 888 (7th Cir. 2013); Suggs v. United States, 513 F.3d 675, 678 (7th Cir. 2008).  Petitioner has not even attempted to make this showing.  Even if this Court considered all of the claims that Petitioner raises in his § 2255 Motion as claims counsel should have raised on appeal, the discussion below in Section C demonstrates that those claims were neither significant

nor stronger than the claims counsel did raise.

Petitioner also argues that he requested continued assistance through Madden but was sent notification of counsel's withdrawal. However, as the Seventh Circuit docket reflects, Petitioner was advised of Madden's motion to withdraw and objected. The Seventh Circuit granted the motion to withdraw and gave Petitioner time within which to file a petition for rehearing. Petitioner failed to do so. Petitioner can show neither deficient performance nor prejudice from the withdrawal by counsel on appeal.

In sum, Petitioner does not satisfy the performance or prejudice prong required for his claims of ineffective assistance in his § 2255 Motion to proceed. Because the briefing and record conclusively establish that counsel's performance was either not deficient or that Petitioner suffered no prejudice from his attorneys' alleged deficient performances, no evidentiary hearing is warranted.

**C.   Even if Petitioner's Remaining Claims Were Not Procedurally Defaulted, Petitioner is Not Entitled To Relief on Those Claims**

Even if Petitioner's remaining claims were not procedurally

defaulted, Petitioner is not entitled to relief.

    1.    <u>Ground One, Subpart 1: Whether the Court Improperly</u>
           <u>Denied the Use of Exculpatory Evidence by Petitioner</u>

Petitioner argues that the Court improperly excluded exculpatory evidence.

First, Petitioner argues that the Court erred by barring evidence of R.P.'s mental history, in particular the 2008 medical records from Lincoln Prairie Behavioral Health Center. The Court allowed Petitioner, who was proceeding pro se at that time, to review those medical records. Crim., Tr. at 36-37 (d/e 229) (October 19, 2011).

Petitioner sought the admission of the mental health records on the basis that the allegations R.P. made against Petitioner were made when R.P. was suffering from bipolar disorder, personality disorder, and had attempted suicide. Tr. at 4 (d/e 202) (October 31, 2011). Petitioner further argued that information in the mental health records showed that R.P. had undergone stressful periods in her life and those factors could have influenced her decision to make the allegations. <u>Id.</u> The Government argued the mental health records would be relevant only if R.P. could not accurately

perceive the events at the time the crime occurred or accurately perceive and recall the events at the time of her testimony, which was not the case.  Id. at 6.

The Court denied Petitioner's request to admit the mental health records, finding the evidence was not relevant.  Tr. at 8-9 (d/e 202).  The Court noted, however, that Petitioner could re-raise the issue prior to or during the testimony of R.P.  Id.  Petitioner did not re-raise the issue prior to or during the testimony of. R.P.  See Tr. 602-666.

Petitioner has failed to demonstrate that the Court erred by barring R.P. mental health history.  Evidence that R.P. was suffering from bipolar disorder, had a personality disorder, had attempted suicide, and was undergoing stressful periods in 2008 was not relevant to R.P.'s credibility or capacity to testify when she testified at trial in 2011.  See, e.g., Fed. R. Evid. 401 (evidence is relevant if it has a tendency to make a fact more or less probable, and the fact is of consequence in determining the action).

Second, Petitioner argues that Dr. David Decker should have been allowed to testify.  However, at the pretrial conference, Petitioner indicated that he intended to call Dr. Decker to

authenticate the mental health records. Crim., Tr. at 44 (d/e 206) (October 28, 2011). The Government agreed not to object to the records' authenticity. Id. at 45 (but not waiving relevance or an objection based on privilege should something in those records be found to be admissible). Therefore, the Court granted the Government's motion to exclude the testimony of Dr. Decker without objection. Id. at 46; October 28, 2011 Minute Entry. Because Petitioner never sought to have Dr. Decker testify on anything other than the authenticity of the medical records, he cannot now complain that the Court should have allowed Dr. Decker to testify. Moreover, as noted above, R.P.'s mental health history was not relevant.

Third, Petitioner argues that the Court erred by barring introduction of R.P.'s sexual history. The Court properly barred such evidence. Rule 412(a) of the Federal Rules of Evidence bars evidence of a victim's sexual behavior or sexual predisposition. Fed. R. Evid. 412(a). A court may, however, admit the following evidence in a criminal case: (1) evidence of specific instances of a victim's sexual behavior if offered to prove that someone other than the defendant was the source

of semen, injury, or other physical evidence; (2) evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and (3) evidence whose exclusion would violate the defendant's constitutional rights. Fed. R. Evid. 412(b)(1) (identified as "exceptions"); see also United States v. Rogers, 587 F.3d 816, 820 (7th Cir. 2009) (minors lack the capacity to consent and, therefore, "sexual contact with a minor is always 'without consent'"). Here, none of those exceptions applied.

Fourth, Petitioner argues he was prejudiced by the Court's refusal to play all of the recorded phone conversations during trial and playing only redacted recordings. Am. Pet. (d/e 16-1, p. 5 of 16).

Federal Rule of Evidence 106 provides that if a party introduced all or part of a recorded statement, the adverse party may require introduction of any other part of the recorded statement that in fairness ought to be considered at the same time. Fed. R. Evid. 106. A complete statement must be heard when

necessary to (1) explain the admitted portions, (2) place the admitted portions in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding.  United States v. Yarrington, 640 F.3d 772, 780 (7th Cir. 2011).  "The purpose of the rule is to prevent a party from misleading the jury by allowing into the record relevant portions of the excluded testimony which clarify or explain the part already received."  United States v. Reese, 666 F.3d 1007, 1019 (7th Cir. 2012) (internal quotations marks and citation omitted).

At the hearing, the Government indicated that the redacted portions of the calls consisted of information that was barred (R.P.'s sexual history and mental health) or would be hearsay if offered by Petitioner.  Crim., Tr. at 83-84 (d/e 206) (October 28, 2011).  In his § 2255 Motion, Petitioner does not identify the portions of the phone recordings that should have been admitted to prevent misleading the jury to clarify or explain the parts of the recording that were played.  Moreover, to the extent Petitioner sought to admit hearsay, "a party cannot use the doctrine of completeness to circumvent Rule 803's exclusion of hearsay testimony."  United States v Vargas, 689 F.3d 87, 876 (7th Cir.

2012).  Additionally, Petitioner testified at trial and had the opportunity to present the evidence he wanted to present. Therefore, Petitioner is not entitled to relief under § 2255 on this ground.

Finally, Petitioner argues that Detective Morrow of the Springfield Police Department did not have jurisdiction to investigate the case because Defendant lived in Riverton, Illinois, which had its own police force and because the Sangamon County Sheriff had jurisdiction.  Petitioner's argument lacks any support and is denied.

2. <u>Ground One, Subpart 2 – Whether the Court Allowed False Testimony on Behalf of the Government</u>

Petitioner asserts the Government introduced false testimony during the trial.  A conviction obtained through the knowing use of false testimony violates due process.  <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959).  To obtain relief, Petitioner must show (1) there was false testimony; (2) the prosecution knew or should have known it was false; and (3) there is a likelihood the false testimony affected the judgment of the jury.  <u>Morales v. Johnson</u>, 659 F.3d 588, 606 (7th Cir. 2011).

Petitioner argues that R.P.'s testimony about Petitioner touching her were false because she told all of the doctors, therapists, and questioners that she had never been touched or abused by anyone. Am. Pet. (d/e 16-1, p. 9 of 16). However, Petitioner has failed to even show that R.P.'s testimony was false.

R.P. testified that she never said anything about the events until she was 16 years old. Crim., Tr. at 627 (d/e 204) (November 3, 2011). She explained that she kept the information secret for so long because she was afraid of what would happen to her and her brother and because she did not want to hurt her dad. Tr. at 626-627. She revealed the information when she did because Petitioner remarried a woman with granddaughters, and R.P. was afraid that, if she did not say anything, something might happen to them. Tr. at 627.

Petitioner is essentially challenging R.P.'s credibility. R.P.'s credibility was an issue for the jury, and the jury found her credible. See, e.g., United States v. Dunigan, 884 F.2d 1010, 1013 (7th Cir. 1989) (credibility is "a matter inherently within the province of the jury"). Petitioner is not entitled to relief on this ground.

Petitioner also argues that the Court should not have allowed Detective William Lynn to testify about pictures and items seized by Detective Chad Gish in Nashville, Tennessee because no nexus existed between any of the computers in question. Detective Lynn testified that certain images (Exhibit 5A) were seized by Chad Gish in Nashville and Detective Lynn compared those images to the images of R.P. in Petitioner's computers. Tr. 583-584. Detective Chad Gish also testified about the search and seizure of computers in a case in Nashville, on which images of R.P. were found.

The testimony was relevant to show that the images traveled in interstate commerce. The Government was not, however, required to show how the images got on the computer in Nashville or that Petitioner even knew that the images travelled in interstate commerce. See United States v. Foley, 740 F.3d 1079, 1082 (7th Cir. 2014) (noting that the production of child pornography statute contains a commerce element, which requires the Government to show either that the images traveled in, or that the defendant knew the images would travel in, interstate or foreign commerce, or that any material used to produce the images traveled in interstate or foreign commerce); United States v. Smith, 459 F.3d

1276, 1289 (11th Cir. 2006) (jurisdiction extends to child

pornography that has traveled in interstate commerce, which does

not require proof of a mental state); Purvis v. Indiana Dep't of Child

Servs., No. 15-CV-00563-SEB-MPB, 2017 WL 2172095, at *4 (S.D.

Ind. May 17, 2017) (interstate commerce element met if the images

actually traveled in interstate commerce).

Petitioner offers no basis for finding the evidence false.

Petitioner is not entitled to relief on this claim.

3.  Ground One, Subpart 3 and Ground Four—
    Whether Petition Was Denied Rights Pursuant to
    18 U.S.C. 3142

Petitioner argues that he should not have been detained

pending trial.  He argues that his pretrial detention violated his

Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendment

rights.

In October 2009, following a detention hearing, United States

Magistrate Judge Byron G. Cudmore ordered Petitioner detained.

Crim., Detention Order (d/e 6).  Judge Cudmore found that the

offense charged was a serious child pornography offense and was

characterized as a crime of violence under 18 U.S.C. § 3156(4).  Id.

¶ 1.  A rebuttable presumption in favor of detention applied under

18 U.S.C. § 3142(e)(3), and the presumption was not rebutted as to the danger prong. Id. ¶ 2. Specifically, Judge Cudmore noted that the weight of the evidence was strong and clearly satisfied the probable cause standard. Id. ¶ 3. In addition, the issues raised by the Government regarding witness tampering were concerning. Id. ¶ 5. Petitioner possessed software that enabled him to destroy evidence. Id. Petitioner did not comply with the Department of Children and Family Services safety plan that was intended to ensure the safety of the victim in the case. Id.; see also Tr. at 9 (d/e 152 ) (Detective Morrow's testimony that Petitioner violated the safety plan restriction that Petitioner have no contact with R.P. by going to R.P.'s school and contacting by telephone R.P.s maternal grandmother, with whom R.P. was staying, and trying to talk to R.P.). As such, Judge Cudmore was not satisfied that any condition or combination of conditions would reasonably assure the safety of the community if Petitioner were released. Order, ¶ 5. Consequently, Judge Cudmore found by clear and convincing evidence that the defendant posed a risk of danger to the community. Id. ¶ 6. He also found, however, that Petitioner had significant ties to the community and was not a flight risk. Id. ¶ 7.

Petitioner challenged this decision numerous times throughout his case, and each time his request for pretrial release was denied. See Crim., May 6, 2011 Text Order; July 11, 2011 Minute Entry; Opinion (d/e 71); October 14, 2011 Detention Order (d/e 93).

Petitioner was properly detained pending trial in this matter, and the Court took extensive efforts to ensure that Petitioner had the ability to conduct his defense despite being detained.  After Petitioner decided to proceed pro se, the Court appointed standby counsel.  The Court offered to move Petitioner from the Pike County Jail to the Sangamon County Jail to be closer to standby counsel and the Court.  Crim., Tr. 33 (d/e 229) (October 19, 2011); Tr. at 58 (d/e 206) (October 28, 2011) (the Court also indicating that Sangamon County would be ordered to give Petitioner the medicines he currently takes).  Petitioner refused.  Id.  In addition, the Court ensured that Petitioner had access to a telephone and the ability to send and receive documents by fax machine in the Pike County Jail.  Crim., Tr. at 46-60 (d/e 206) (October 28, 2011) (discussions regarding Petitioner's access to a fax machine and telephone at Pike County Jail) Tr. at 40 (d/e 229) (October 19, 2011) (confirming that the Pike County Jail has a fax machine); Tr.

at 280 (d/e 201) (November 1, 2011)(the Court noted that "it sounds from our previous discussions as if Pike County has been very lenient with Mr. Price and he has all of his documents"). Petitioner has failed to show that his rights were violated.

Petitioner further claims that his rights were violated because the Sangamon County Jail—where Petitioner was housed from the time of his arrest until his first court appearance—only gave him his hypertension and muscle spasm medication once a day. Petitioner also claims he was suffering withdrawal from caffeine, nicotine, and narcotics during that time. According to Petitioner, the logical conclusion is that he was severely physically and cognitively impaired during his first meeting with counsel and the court appearance that followed. Am. Pet. (d/e 16-3, p. 4 of 16).

Petitioner does not support with any evidence his claim that he was physically and cognitively impaired at his first meeting with counsel or at the first court appearance. In addition, the transcript of Petitioner's first court proceeding reflects that each time Judge Cudmore asked Petitioner whether he understood what he was told, Petitioner indicated that he did. <u>See</u> Crim., Tr. at 5, 6, 30, 32 (d/e 152) (October 27, 2009). Petitioner is not entitled to

relief on this ground.

       4.    <u>Ground 1, Subpart 4—Whether Defendant Was</u>
              <u>Compelled to Proceed Pro Se</u>

Petitioner argues that he was compelled to proceed pro se. This argument is refuted by the record. <u>See</u> discussion <u>supra</u> at 18; Crim., Tr. at 11-23 (d/e 229) (October 19, 2011). The Court thoroughly advised Petitioner of the dangers of proceeding pro se, told him he would be held to the same standard as an attorney, and strongly urged Petitioner to not represent himself. Crim., Tr. at 11-20 (d/e 229). The Court reviewed the medication Petitioner was taking and confirmed that the medications did not affect Petitioner's mental state or ability to think. <u>Id.</u> at 23. Petitioner insisted on representing himself.

Petitioner also argues the Court prejudiced his case when the Court denied his motion to continue after he elected to proceed pro se.

On October 6, 2011, the Grand Jury returned a Second Superseding Indictment. Crim. (d/e 76). The case was set for an arraignment for October 13, 2011. Petitioner's counsel argued Petitioner could not be brought to trial less than 30 days from the

arraignment and also sought a continuance of the trial.  <u>See</u> Crim.

(d/e 82, 84).  Although the Government originally did not object to

a continuance, the Government objected after the Court directed

briefing on <u>United States v. Roja-Contreas</u>, 474 U.S. 231 (1985)

(providing that the Speedy Trial Act does not require that the 30-

day trial preparation period be restarted upon arraignment on a

superseding indictment, although the court has the discretion to

grant such a continuance).  <u>See</u> Crim., (d/e 84).  The Court denied

the request for a continuance.  <u>See</u> Crim., October 13, 2011

Minute Entry.  On October 19, 2011, Petitioner elected to proceed

pro se.  He then asked for a continuance of the trial, which the

Court denied.

    Whether to grant a motion to continue a trial is a decision

within the district court's discretion.  <u>See</u> <u>United States v. Miller</u>,

327 F.3d 598, 601 (7th Cir. 2013) (noting that, on direct appeal,

the defendant must show an abuse of discretion and actual

prejudice).  Courts consider several factors when deciding whether

to continue the trial, including the amount of time available for

preparation, the likelihood of prejudice if the motion is denied, the

defendant's role in shortening the preparation time, the complexity

of the case, the availability of discovery, the likelihood that a continuance would have satisfied the movant's needs, and the inconvenience and burden to the court and its case load. Id.

Here, the case had been pending for nearly two years, with many of the delays attributable to Petitioner and his frequent change of counsel. Discovery had been produced, and Petitioner had ample time to review that discovery. Moreover, Petitioner has not identified how the denial of the continuance actually prejudiced his case. Petitioner is not entitled to relief on this ground.

5. Ground One, Subpart 5 and Ground Four—
Whether the Court Denied Defendant's Right to a
Speedy Trial

Petitioner also argues that the Court denied him his statutory and constitutional rights to a speedy trial.

Petitioner has not shown a violation of the Speedy Trial Act because the time was properly excluded from the 70-day period. Petitioner sought numerous continuances and did not object to the three continuances sought by the Government and, in fact, joined in one. 18 U.S.C. § 3161(h)(7) (providing that any period of delay resulting from a continuance if the judge granted the continuance

on the basis of his findings that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" shall be excluded in computing the time within which the trial must commenced).  The Court made the required "ends of justice finding."  Further, additional time was excluded from the 70-day period due to Petitioner's pending motions.  18 U.S.C. § 3161(h)(1)(D) (excluding from the time within which the trial must be commenced any delay resulting for any pretrial motion from the filing of the motion through the prompt disposition of the motion).

Petitioner has also failed to show a constitutional speedy trial violation.  See Barker v. Wingo, 407 U.S. 514, 530 (1972) (identifying the four factors to consider when determining whether a defendant has been deprived of his Sixth Amendment right to a speedy trial: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant"). Although the delay in this case was nearly two years, Petitioner was the cause of much of the delay, due in part to seeking new counsel several times over the course of the case.  Petitioner never asserted his right to a speedy trial and, in fact, sought an

additional continuance immediately prior to trial.  In addition,

Petitioner has not shown prejudice.  Therefore, Petitioner has failed

to demonstrate a Sixth Amendment speedy trial violation.  <u>See</u>,

<u>e.g.</u>, <u>Gearhart</u>, 576 F.3d at 463 n. 3 (finding no Sixth Amendment

speedy trial violation where the defendant sought nine

continuances, defendant did not object to the co-defendants'

requested continuances, and the defendant was not prejudiced by

the delay).

      6.   <u>Ground One Subpart 6:  Whether the Jury Was
Properly Instructed</u>

Petitioner argues that the Court improperly instructed the

jury in two ways.  First, Petitioner claims the Court failed to

properly inform the jurors of their right "to disagree with the

particular law that the indictment was for."  Am. Pet. (d/e 16-2, p.

13 of 16).  However, while "[j]ury nullification is a fact, because the

government cannot appeal an acquittal; it is not a right, either of

the jury or of the defendant."  <u>United States v. Perez</u>, 86 F.3d 735,

736 (7th Cir. 1996).  Consequently, a jury instruction sanctioning

jury nullification must not be given.  <u>See United States v. Davis</u>,

724 F.3d 949, 954-55 (7th Cir. 2013); <u>United States v. Anderson,</u>

716 F.2d 446, 449-50 (7th Cir. 1993).

Petitioner also argues that the Court failed to properly instruct the jury on the presumption of innocence. This claim is refuted by the record. <u>See</u> Crim., Jury Instructions (d/e 163 at 27 of 32) (providing in part as follows: "The defendant is presumed to be innocent of each of the charges. The presumption continues during every stage of the trial and your deliberations on the verdict."); Crim., Tr. at 951 (d/e 205) (November 4, 2011).

7.  <u>Ground One, Subpart 7: Whether Petitioner</u>
     <u>Showed Prejudicial Error and Bias</u>

Petitioner argues that he did not receive a fair trial because the undersigned judge should have recused herself from this case. Petitioner asserts that the judge "pushed" the case prejudicially and continually denied Petitioner's rights under 18 U.S.C. § 3142 (statute pertaining to pretrial release). Am. Pet. (d/e 16-2, p. 15 of 16).

Petitioner orally moved for substitution of judge and, on October 24, 2011, filed a written motion pursuant to 28 U.SC. § 144 with an attached affidavit. Crim., Mot. (d/e 116). In the affidavit, Petitioner complained that Judge Myerscough (1) stated

on July 11, 2011 that this would be the last attorney appointment and continuance; (2) made the statement that Petitioner's pretrial release request was well written but denied the request, and her overall tone and wording gave Petitioner a "chilling effect and overall feeling of prejudice towards" him; (3) entered an Opinion, the tone of which was biased by failing to include the term "alleged"' when describing certain conduct; (4) denied Petitioner's requests and motions; and (5) ordered the Government to brief a case despite the Government having already not objected to a continuance. Crim., Aff. (d/e 16-1).

The basis for a request for a judge to recuse herself due to bias generally must stem from an extrajudicial source. Litkey v. United States, 510 U.S. 540, 544 (1994). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion." Id. at 541. Petitioner's allegations are based on judicial rulings, and he does not point to an extrajudicial source of bias. Petitioner is not entitled to relief on this ground.

8.    Ground Three: Whether Petitioner Demonstrated Fraud on the Court

Petitioner argues he is entitled to relief under § 2255 because

the investigating agents committed fraud. Specifically, Petitioner argues that the agents filed false documents pertaining to the search of the Dell laptop belonging to Petitioner. While his argument is not entirely clear, Petitioner appears to argue that the agents seized the Dell laptop prior to obtaining a search warrant. The record refutes Petitioner's claim that the agents filed false documents.

The following evidence is taken from the suppression hearing. Crim., Tr. (d/e 153) (October 3, 2011). On September 11, 2009, Detective Paula Morrow of the Springfield Police Department interviewed Petitioner. Id. at 9 (Morrow). During that interview, Petitioner signed a consent-to-search form pertaining to the Dell laptop computer. Id. at 16-19. On October 5, 2009, the computer was turned over to the custody of Michael Mitchell, the resident agent at Immigration and Customs Enforcement (ICE). Id. at 31. On October 15, 2009, Agent Eric Bowers of ICE filed a federal application for a search warrant for the purpose of conducting an examination of items that had been seized from Petitioner's residence on a state search warrant and also on a laptop computer that had been seized on consent by the Springfield Police

Department.  Id. Tr. at 63-64 (Bowers).

The record does not support Petitioner's contention that the laptop was improperly seized before agents obtained a search warrant because Petitioner consented to the seizure of the laptop. The subsequent search warrant pertained to conducting an examination of that seized laptop.  To the extent Petitioner argues that Agent Mitchell lacked the authority to take custody of the laptop on October 5, 2009 because the search warrant had not been obtained, that argument also fails.  The laptop was in law enforcement custody by his consent.  Petitioner has failed to demonstrate that the agents filed fraudulent documents.

9.    Ground Four: Whether Petitioner's Rights Were Violated

In Ground Four, Petitioner lists the constitutional bases for many of his claims, most of which are addressed above.  Two claims under Ground Four remain to be addressed.

First, Petitioner argues that his First Amendment rights were violated because the pictures in question were artistic.  However, the jury determined that the pictures Petitioner produced were child pornography, and child pornography is not protected under the First Amendment.  New York v. Ferber, 458 U.S. 747, 763

(1982).

Second, Petitioner argues that his Fourth Amendment rights were violated by the search and seizure of his laptop. As noted above, this claim was raised on appeal, and this Court was affirmed. Moreover, the record shows that the laptop was seized with Petitioner's consent.

## III.  CONCLUSION

For the reasons stated, Petitioner's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 16) is DENIED. No evidentiary hearing is necessary. Because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court also denies a certificate of appealability under Rule 11(a) of the Rules Governing Section 2255 Proceedings. See 28 U.S.C. § 2253(c)(2).

This case is closed.

**ENTER: September 7, 2017**

**FOR THE COURT:**

                            **__s/Sue E. Myerscough__**
                            **SUE E. MYERSCOUGH**
                            **UNITED STATES DISTRICT JUDGE**